JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REX ALAN DINESEN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>U.S. TOOL GRINDING, INC.; and DOES 1 through 20, inclusive,<br><br>　　　　　　　Defendants. | Case No. 2:23-cv-04199-HDV (ASx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT [DKT. NO. 13]** |

## I. INTRODUCTION

This action arises out of a wage and hour class action and involves a request to remand the action back to state court (the "Motion") [Dkt. No. 13] for failure to meet the $5 million amount in controversy requirement under the Class Action Fairness Act of 2005 ("CAFA").

Plaintiff Rex Alan Dinesen ("Plaintiff") argues that Defendant U.S. Tool Grinding, Inc. ("Defendant") cannot plausibly allege the amount in controversy, and the Court agrees based on Defendant's improper assumptions of overtime wage violation rates in its Removal Notice [Dkt. No. 1]. For the reasons discussed below, the Motion is granted, and the action is remanded.

## II. BACKGROUND

On February 1, 2023, Mr. Dinesen filed his putative class action complaint ("Complaint") [Dkt. No. 1-4] against U.S. Tool Grinding in the Los Angeles County Superior Court. He brings claims for violations of state wage and hour laws, stemming from U.S. Tool Grinding's alleged failure to pay wages timely, failure to pay minimum, overtime and separation wages, failure to provide meal periods and accurate itemized wage statements, failure to permit rest breaks, and failure to reimburse business expenses, as well as its unfair business practices in violation of Cal. Bus. and Prof. Code § 17200, *et seq.* Complaint at 9–19.

On May 30, 2023, U.S. Tool Grinding removed the action alleging CAFA jurisdiction. Removal Notice ¶ 8. Dinesen moved to remand on June 15, 2023. *See* Motion. U.S. Tool Grinding opposed on June 23, 2023 ("Opp.") [Dkt. No 18]. Dinesen replied on July 19, 2023 ("Reply") [Dkt. No. 28].

### A. FACTS

Mr. Dinesen worked as a non-exempt, hourly employee at U.S. Tool Grinding. Complaint ¶¶ 26, 29. He brought his action on behalf of a putative class of California citizens who are and were employed by U.S. Tool Grinding as non-exempt employees throughout California. *Id.* ¶ 1. The proposed classes are defined as:

> Class: All California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between August 7, 2018 and the date of class certification ("Class").

2

*Id.* ¶ 20.

  Waiting Time Subclass: All members of the Class who separated their employment with Defendant at any time between August 7, 2019 and the date of class certification ("Waiting Time Subclass").

*Id.* ¶ 21.

  Plaintiff alleges that the Class did not receive "all wages" "for all hours worked" (including overtime wages and minimum wages) at the correct rate of pay. *Id.* ¶ 29. Class members did not receive all meal or rest periods or payment of one additional hour of pay at their hourly rate of pay when they did not receive a timely, uninterrupted meal or rest period. *Id.* ¶¶ 30, 31. They also were not reimbursed for business expenses. *Id.* ¶ 32. The Complaint also asserts that the Waiting Time Subclass members were not timely paid their separation wages. *Id.* ¶ 34.

## III.  LEGAL STANDARD

  A defendant may remove a class action from state to federal court by filing a notice of removal that outlines the grounds for removal. 28 U.S.C. § 1453(b); 28 U.S.C. § 1446(a). "A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, *see* 28 U.S.C. § 1447(c), the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th. Cir. 2014).

  "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* at 1197 (internal quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.*

  A defendant is only required to file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin*

*Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. The preponderance of the evidence standard requires that "the defendant . . . provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties may submit evidence, including declarations or affidavits, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." *Ibarra*, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. Evidence proffered "may be direct or circumstantial," and "may require a chain of reasoning that includes assumptions" not "pulled from thin air" but with "reasonable ground underlying them." *Id.* at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.*

In addition, attorney's fees may be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id.* at 796.

## IV. DISCUSSION

Mr. Dinesen moves for remand on the ground that U.S. Tool Grinding failed to prove by a preponderance of the evidence that the amount in controversy exceeds the $5,000,000 jurisdictional minimum under CAFA. Motion at 4. U.S. Tool Grinding asserts that the amount in controversy requirement under CAFA is satisfied—estimating the potential value of Mr. Dinesen's claims at "approximately $5,432,448.01", excluding attorneys' fees. Removal Notice ¶ 60. Defendant applies a 25% benchmark for attorneys' fees to get a total "of approximately $1,358,112.00" in attorneys' fees. *Id.* In total, Defendant alleges that "the amount in controversy in this matter exceeds $6,790,560.01." Opp. at 24.

### A. Diversity and Numerosity

The existence of minimal diversity is not disputed by the parties. Mr. Dinesen is a citizen of California. Complaint ¶ 10. U.S. Tool Grinding is a corporation formed under the laws of Missouri, with its principal place of business and corporate headquarters in Missouri. Removal Notice ¶ 21; Declaration of Stephen Stroup ("Stroup Decl.") ¶ 6 [Dkt. No. 1-2]. CAFA's minimal diversity requirement is satisfied.

The Class includes at least 159 non-exempt employees who were employed by Defendant between August 7, 2018 and the date of the removal. Stroup Decl. ¶ 9. CAFA's numerosity requirement is also satisfied.

### B. Amount in Controversy

While U.S. Tool Grinding's "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million, *Dart*, 574 U.S. at 89, "[e]vidence establishing the amount is required where … defendant's assertion of the amount in controversy is contested by plaintiffs." *Ibarra*, 775 F.3d at 1197 (citing *Dart*, at 554) (internal quotations omitted). Here, Plaintiff contests Defendant's assertions underlying the amount in controversy calculations. *See* Motion at 4–6; Reply at 3–10.

U.S. Tool Grinding submitted the Declaration of Stephen Stroup, its Chief Financial Officer, who states in relevant part:

7. I caused to be retrieved and compiled employment data on Defendant's non-exempt employees in California from August 7, 2018, to present (the "Employee Data"). This Employee Data included employee's dates of hire, dates of separation (where applicable), final and current hourly rates, worksite location, and position in the form of Excel spreadsheets. This Employee Data is maintained in the ordinary course of business.…

9. Defendant's preliminary investigation reveals a potential class size of approximately 159 non-exempt employees who were employed by Defendant between August 7, 2018, through the present in the State of California. During this timeframe, the employees worked approximately 14,345 workweeks.

10. Defendant's preliminary employees who were employed by Defendant between February 1, 2022, to present in the State of California. During this period, the total number of pay periods for all class members is approximately 4,077.

11. Defendant's preliminary investigation also reveals a potential class size of approximately 72 former non-exempt employees employed by Defendant between approximately August 7, 2019, through the present in the State of California. The average hourly regular rate for these former employees is approximately $20.22 per hour.

12. From August 7, 2018, to present, putative class members worked approximately 3,376 months.

Stroup Decl.

U.S. Tool Grinding presents no new evidence in support of their Opposition to the Motion. *See* Opp. Accordingly, U.S. Tool Grinding has relied on the following factual assertions: (i) the Class consists of 159 putative class members, who worked approximately 14,345 workweeks; and (ii) 72 of those class members are former employees that earned an average hourly rate of $20.22 per hour. However, U.S. Tool Grinding omits critical information. Defendant does not explain how these figures were calculated. It fails to provide the average hourly rate for the putative class members who are current employees, the workweeks of former employees, average shift length, or a breakdown of full-time versus part-time putative class members. And it does not indicate whether its calculation includes vacation periods or other paid time off in which they would not have been

subject to meal and rest period violations. Nor does U.S. Tool Grinding proffer calculations to support the amount in controversy assertions.

More importantly, however, Defendant's amount in controversy calculations assume an unrealistic, 100% rate of overtime violations, per employee, *per day*. California Labor Code § 510 requires employers to pay non-exempt employees 1.5 times their regular rate of pay for any hours worked over 8 in one day or 40 in one week. Here, Defendant's projections proceed on the theory that each employee was owed one additional unpaid hour each day, five days per week, for each and every week worked.[1] The only basis for this sky-high assumption is the generalized allegation in the Complaint that "Plaintiff and Class Members were not paid all wages (including minimum wages and overtime wages) for all hours worked at the correct rate and within the correct time." Complaint ¶ 29; *see also* Removal Notice ¶ 49.

Defendant's legal authorities simply do not support the reasonableness of this once-per-day-every-day CAFA calculation. To the contrary, the overtime wage calculations commonly accepted for CAFA purposes recognize one violation *per week*. See *Kastler v. Oh My Green, Inc.*, 2019 U.S. Dist. LEXIS 185484, at *12 (N.D. Cal. Oct. 25, 2019) (accepting an assumption of "one hour of … unpaid overtime *per week* per class member") (emphasis added), *Chavez v. Pratt (Robert Mann Packaging)*, LLC, 2019 U.S. Dist. LEXIS 59399, at *12 (N.D. Cal. Apr. 5, 2019) (accepting an assumption of "30 minutes of unpaid overtime per putative class member *per week*) (emphasis added), *Trigueros v. Stanford Fed. Credit Union*, 2021 U.S. Dist. LEXIS 120271, at *11–12 (N.D. Cal. June 28, 2021) (accepting a 20% violation rate and assumption a 0.5 multiple for "the difference between the straight-time rate and the overtime rate"), *Ramirez v. Cornerstone Bldg. Brands*, 2022 U.S. Dist. LEXIS 63673, at *11 (E.D. Cal. April 4, 2022) (accepting an assumption of overtime rates

---

[1] For its unpaid overtime wages determination, "Defendant assumed one (1) hour of unpaid time per day per employee.…" Removal Notice ¶ 49 (citing Complaint). While Defendant indicates that "each employee's final overtime hourly rate of pay was multiplied by the number of workweeks worked by the employee," it appears that it also multiplied the total by the number of days per workweek. *Id.* ¶ 50. Multiplying the average hourly rate for the former employees, $20.22 per hour, by 1.5 for overtime hourly rate, by 14,345 workweeks worked by all 159 putative class members, by 5 days a week of violations, provides a total very close to the $2,136,648.30 alleged by Defendants in its Removal Notice. *Id.*

7

of "30 minutes *weekly*") (emphasis added).

Indeed, another case relied on by Defendant, *Mackall v. Healthsource Global Staffing Inc.*, 2016 U.S. Dist. LEXIS 119292 (N.D. Cal. Sept. 2, 2016), Opp. at 20, explicitly considered and rejected defendant's assumption of one hour of unpaid overtime violation per day, and instead allowed for plaintiff's "assumption of one hour of overtime violation per term of employment," lowering the overtime amount in controversy from $818,100 to $163,620. *Id.* at *12–13. The Court further found that defendant "fail[ed] to submit any evidence to back up its calculation or otherwise explain why a 100% violation rate is a reasonable assumption." *Id.* at *12. Here, "there is nothing in the complaint that suggests [U.S. Tool Grinding] failed to do so *every time for every shift*." *Id.* (emphasis in original).

Thus, if the Court liberally applies a 100% violation rate of one hour of overtime per week per class member, the amount in controversy for overtime violations comes out to $435,083.85.[2] Even assuming the accuracy and reasonableness of Defendant's calculations for violations of meal and rest periods ($1,260,800.50), wage statement violations ($293,800), waiting time penalties ($395,998.72), and unreimbursed business expenses ($84,400), and allowing for 25% attorney's fees ($617,520.77), the total amount is $3,087,603.84, which does not meet the CAFA threshold.

In summary, the Court rejects Defendant's implausible and legally indefensible overtime calculations. Even applying Defendant's other assumptions as true for CAFA purposes, Plaintiff's damages do not reach even close to the jurisdictional amount required for removal.

## V. CONCLUSION

For the foregoing reasons, the Motion is granted and the action remanded.

Dated: November 9, 2023

_____
Hernán D. Vera
United States District Judge

---

[2] Multiplying the average hourly rate for the former employees, $20.22 per hour, by 1.5 for overtime hourly rate, by 1 day per week of violations, by 14,345 workweeks worked by all 159 putative class members is $435,083.85.